**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE IRIZARRY ESTEPAN | No. 2:25-cr-00161-LEW |

**GOVERNMENT'S TRIAL BRIEF AND MOTIONS IN LIMINE**

The government files this brief to detail the facts and legal issues likely to come before the Court when trial commences in this matter on June 8, 2026. Additionally, the government moves the court (1) to allow the government to introduce evidence of the defendant's 2023 Massachusetts drug trafficking conviction under Rule 404(b), and (2) to preclude the defendant from arguing that a co-defendant's conviction for possessing with intent to distribute the same drugs at issue here makes it less likely—or legally impossible—that the defendant committed the instant offense. In support, the government states the following:

**I.    STATUS OF THE CASE**

    **A.** Jury selection is scheduled for June 1, 2026.

    **B.** Trial is scheduled to begin June 8, 2026.

    **C.** The Government expects to call approximately ten witnesses at trial and anticipates that its evidence will take less than two days to present.

**II.   STATEMENT OF THE CASE**

On about August 3, 2024, the defendant, Jose Irizarry Estepan, was arrested when he was found sitting in the passenger seat of a stolen Ford F-150 (the "Subject Vehicle") in the parking lot of the Hillview Market in Saco. The Subject Vehicle had been reported stolen by its owner on August 2, 2024. When they arrived on scene, officers

observed Irizarry in the cabin of the Subject Vehicle, and a second individual ("Cooperating Defendant-1" or "CD-1") exiting the market and about to enter the driver's seat of the Subject Vehicle. When CD-1 saw the officers, he immediately turned around to return to the market before being intercepted by police. Ultimately, the defendant and CD-1 were both arrested and searched, as was the cabin of the Subject Vehicle. Officers recovered, among other things, approximately 112 grams of fentanyl and approximately 12 grams of cocaine in a Victoria's Secret tote bag in the back seat, a personal use amount of cocaine in a folded-up piece of paper in the driver's side dashboard, drug paraphernalia demonstrating recent drug use (e.g., burnt pieces of tinfoil, copper wire) scattered around the cabin, and $762.00, a kitchen knife, and two cellular phones from the defendant's person.

CD-1 entered into a plea and cooperation agreement with the government and admitted to his role in the distribution of the narcotics recovered from the Subject Vehicle. In relevant part, CD-1 explained that several days prior to his arrest, CD-1 had stolen the Subject Vehicle when he found the keys in the cab while sheltering from the rain. On about August 3, 2024, CD-1 provided a ride to a friend, "Witness-1," who had ordered drugs from the defendant. At that time, the defendant was selling from 435 Boom Road in Saco. When CD-1 and Witness-1 arrived, the defendant, known to CD-1 as "Chino," was already there with others CD-1 knew to be drug users. Witness-1 purchased the drugs from Chino and provided CD-1 with a small amount of cocaine as payment for the ride. Chino did not speak English and communicated with CD-1 through Google Translate. Chino requested a ride to the store to buy something to eat and some rolling papers, which CD-1 provided in exchange for a small amount of cocaine which CD-1 stored in the dashboard of the Subject Vehicle. CD-1 observed Chino break off the piece

2

of cocaine he provided to CD-1 from a larger amount that he kept on his person. CD-1 further reported that Chino had two phones, which CD-1 believed to be Android phones, on his person at the time of the police encounter. CD-1 did not have a phone at that time.

On March 20, 2025, for his involvement in the events described above, CD-1 pleaded guilty to possession with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). To be clear, CD-1 has always maintained that the bulk of the drugs recovered from the Subject Vehicle were not his but instead belonged to the defendant. He pleaded guilty to possessing with intent to distribute those drugs on an aiding and abetting theory. *See United States v. Palmer*, 203 F.3d 55, 66 (1st Cir. 2000) (aiding and abetting need not be explicitly charged in the indictment, as it is "an alternative charge in every count whether explicit or implicit") (citation modified).

After nearly a year of unsuccessful attempts, the government finally identified the passcode to one of the defendant's two phones, an iPhone (the "Subject Phone"), and was able to extract its contents. The Subject Phone contained voluminous drug talk. For example, on the evening of August 2, 2024, the defendant exchanged a number of messages with a contact listed as "Costu Nick" with a phone number ending in 1963, as follows:

| TIME STAMP[1] | Costu Nick (x1963) | IRIZZARY |
|---|---|---|
| 8/2/2024, 5:24:24 pm | I'm gonna stop by for a stick my boy who wanted the ten still | |

---

[1]    Note that the times reflected here are listed in Eastern Daylight Time ("EDT") which is four hours behind Coordinated Universal Time ("UTC").

| | | |
|---|---|---|
| | needs he wants fifteen when he out 🐱 f work[2] | |
| 5:24:57 pm | | Ok am ready |
| 5:25:42 pm | | Cocaine is on its way. |
| 5:25:48 pm | | May be tonight |
| 7:31:20 pm | Ya he needs 2 oz | |
| 7:31:32 pm | H it's my friend wants quite a bit still but it has to be the same as what I brought over yesterday that he tried the stuff's different | |
| 7:32:26 pm | | Do you need 2 ounces of brown or cocaine? |
| 7:32:49 pm | Up | |
| 7:33:30 pm | | I promise you that I will give you a good cocaine. |
| 7:34:35 pm | B okay but you just got to understand so far they bought 11 stick that was different and then a half of they never got and then when they did it was not good so they just want to make sure everything's always going to be the same do you have any more down like you had yesterday | |
| 7:37:39 pm | | I understand. But that won't happen again. |
| 7:38:09 pm | | I have another good brown one but it will arrive later or tomorrow |
| 7:38:34 pm | | If you get me a car we can go pick it up. |
| 7:38:44 pm | | 125 grams |

---

[2] Any misspellings, grammatical or typographical errors are listed as contained in the original messages.

| | | |
|---|---|---|
| 7:38:50 pm | | Brown Lawrence |

Though the messages leave little to the imagination, at trial, the government intends to call Task Force Officer Jonathan Duquette, who will testify to the drug terminology used in these and other messages, to include, for example, that a "stick," is used to refer to a 10-gram increment of drugs, generally hard-packed fentanyl, that "brown" is frequently used by drug traffickers to describe heroin or fentanyl, and that, similarly, "up" is used to refer to cocaine.

A second conversation with "Costu Nick" recovered from the Subject Phone can be summarized as follows:

| TIME STAMP | Costu Nick (x1963) | IRIZZARY |
|---|---|---|
| **8/3/2024**, 12:25:45 pm | U good yet | |
| 12:26:23 pm | | Ok |
| 12:27:03 pm | Have u gotten morebtet | |
| 12:27:08 pm | More yet | |
| 12:28:32 pm | | I'm going to prepare the money that Tito gave me and I have cocaine |
| 12:28:52 pm | | https://maps.apple.com/?ll=43.519037,-70.513235&q=Marcador&spn= 0.006713,0.015687 |
| 12:43:24 pm | I I need at least a couple of sticks right now | |
| 12:45:28 pm | | If you have the money, you can come to the address where I am now. |

Of particular note here, this conversation occurred on the date of the defendant's arrest. The defendant invited his customer to come purchase cocaine from him and provided an Apple Maps URL indicating that he was present at 435 Boom Road in Saco.

Later that same day, the defendant engaged in a drug conversation with a second customer which can be described as follows:

| TIME STAMP | x6669 | IRIZZARY |
|---|---|---|
| 8/3/2024, 1:12:38 pm | | https://maps.apple.com/?ll=43.519037,-70.513235&q=Marcador&spn=0.006713,0.015687 |
| 1:12:40 pm | Do u have 5 stick | |
| 1:13:03 pm | Do u have six sorry | |
| 1:13:58 pm | | Come |
| 1:14:02 pm | | Am ready |
| 1:14:24 pm | Do u have it on u I can't bring u no where were full | |
| 1:15:06 pm | ? | |
| 1:15:14 pm | | The address I sent you is where I will live now |
| 1:15:35 pm | Ok but I need that now my friend gotta go | |
| 1:15:37 pm | | Tito brought me and gave me more brown and cocaine |
| 1:22:56 pm | Can u do 7 for 750 | |
| 1:24:04 pm | | 7 what? |
| 1:24:05 pm | ? | |
| 1:24:12 pm | Stick | |

| 1:24:31 pm | Brown | |
|---|---|---|
| 1:25:34 pm | | 900 |
| 1:25:34 pm | | 900 |
| 1:26:13 pm | I got 750 840 is seven can I owe u 80 | |
| 1:26:29 pm | | 1'050 is the price normal |
| 1:27:27 pm | Put em in 7 different bags can u | |
| 1:27:31 pm | Almost there | |
| 1:29:10 pm | ? | |
| 1:31:05 pm | I pay 120 I need seven | |
| 1:31:12 pm | | Ok |
| 1:31:14 pm | | Come |

In the conversation described above, which also occurred on the date of the defendant's arrest, the defendant again sends an Apple Maps URL to his drug customer, which corresponds to 435 Boom Road, where, he says, he "will live now." The defendant further indicates that he has both cocaine and fentanyl, and offers to sell seven "sticks" (i.e., 70 grams) to the customer for $900.

Prior to the events of August 2024, the defendant was convicted of possessing with the intent to distribute fentanyl (between 36 and 100 grams), in violation of Chapter 94C, Sections 31 and 32E(c)(2) of the General Laws of Massachusetts. That conviction arose from a drug investigation conducted by a DEA Task Force. On February 13, 2023, officers secured judicially authorized warrants to search both the defendant and his vehicle, having developed probable cause that the defendant was violating

Massachusetts drug laws. On February 15, 2023, officers encountered the defendant driving his vehicle with a front-seat passenger. Officers observed what they believed to be a drug transaction with a third person, whom they subsequently arrested and searched. They proceeded then to execute the search warrants on the defendant and his vehicle. When asked, the defendant lied and stated that he did not possess anything he was not supposed to have. Among other things, officers recovered from the vehicle a kitchen knife, and approximately 57 grams of fentanyl individually packaged for sale resulting in the arrest of the defendant on February 15, 2023. This prior conviction forms the basis of the Section 851 enhancement detailed in the recently-filed Information, Dkt. 41, and, as detailed further below, will be offered at trial pursuant to Federal Rule of Evidence 404(b) to show the defendant's intent, knowledge, absence of mistake, and lack of accident and/or innocent involvement, with respect to the instant offense.

## III.    STATUTE VIOLATED

### 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)

(a) Unlawful Acts

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) . . . distribute, or dispense, or possess with intent to . . . distribute, or dispense, a controlled substance . . . .

(b) Penalties

[A]ny person who violates subsection (a) of this section shall be sentenced as follows:

(1)(B) In the case of a violation of subsection (a) of this section involving –

8

(vi) 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . . . If any person commits such a violation after a prior conviction for a serious drug felony[,] such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life[.]

**21 U.S.C. § 851**

(a)(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial[,] the United States attorney files an information with the court . . . stating in writing the previous conviction to be relied upon.

## IV.    EVIDENTIARY MATTERS

The Government anticipates the following evidentiary issues:

### A. Drug Evidence

The Government will offer the substances that were recovered from the Subject Vehicle at the time of the defendant's arrest. As discussed *infra*, the parties have agreed in principle to a stipulation stating that the substances seized by law enforcement on August 3, 2024, were submitted to a DEA laboratory for examination and forensic testing revealed that the substances contained fentanyl and cocaine.

### B. Lay Opinion Testimony Pursuant to Fed. R. Evid. 701

During the trial, the Government may seek to elicit testimony from experienced drug investigators regarding jargon relating to narcotics trafficking, certain tools of the drug trade, and common methods of operations of drug traffickers. Such testimony that

9

assists the jury, and which is sufficiently grounded in personal knowledge and susceptible to cross-examination, is admissible. *United States v. Paiva*, 892 F.2d 148, 157 (1st Cir. 1989). Rule 701 extends to experienced drug enforcement agents who testify as lay witnesses about the methods of operations of drug traffickers. *See, e.g.*, *United States v. Rosado-Pérez*, 605 F.3d 48, 56 (1st Cir. 2010) (First Circuit has "long held that Government witnesses with experience in drug investigations may explain the drug trade and translate coded language" through lay opinion testimony under Rule 701).

Such testimony is not expert testimony within the meaning of Rule 702. *United States v. Albertelli*, 687 F.3d 439, 447 (1st Cir. 2012). Indeed, the court has stated time and again "that Rule 701 lets in 'testimony based on the lay expertise a witness personally acquires through experience, often on the job.'" *United States v. George*, 761 F.3d 42, 58 (1st Cir. 2014) (*quoting United States v. Santiago,* 560 F.3d 62, 66 (1st Cir. 2009)). Drug dealers frequently use jargon and techniques specific to their industry. Yet "jurors are not expected to be familiar with the idiom and workings of the [illicit drug] community." *United States v. Ladd*, 885 F.2d 954, 960 (1st Cir. 1989); *see also United States v. Echeverri,* 982 F.2d 675, 680 (1st Cir. 1993) ("Laymen, on average, are not familiar with the praxis of the cocaine community."). Anticipated law enforcement testimony on these issues will be grounded in personal knowledge and experience and susceptible to cross-examination, and will be of assistance to the jury. Accordingly, such testimony is admissible under Federal Rule of Evidence 701. *See United States v. Pinillos-Prieto*, 419 F.3d 61, 71 (1st Cir. 2005) (holding that case agent's testimony regarding his experience with general operation of drug conspiracies was permissible lay opinion testimony under Rule 701); *United States v. Rivera-Santiago*, 107 F.3d 960, 968 (1st Cir. 1997) (experienced Customs agents' testimony that proximity of marijuana

10

bales to each other indicated they were dropped from plane helped jury understand defendants' involvement in airdrop); *United States v. Valle*, 72 F.3d 210 (1st Cir. 1995) (no abuse of discretion to admit narcotics detective's testimony as to approximate street value of drugs seized and opinion that quantity was consistent with distribution as opposed to personal use).

### C.  Prior Bad Acts Evidence Per Rule 404(b)

The Government will seek to introduce evidence regarding the defendant's 2023 Massachusetts drug trafficking conviction described above.[3]

The prior conviction is probative of an issue in the case: the defendant's state of mind; specifically, his knowledge, intent, and lack of mistake/innocent involvement. The government anticipates that the defendant will argue that the drugs recovered from the Subject Vehicle were not his but instead belonged to CD-1 (or a third party). The defendant's prior conviction was for possession with intent to distribute fentanyl, the same drug (and essentially the same charge) at issue here. Further, the conduct that gave rise to the conviction occurred in 2023, while the instant offense occurred only months later in 2024. Its similarity to, and temporal proximity to, the instant offense, makes the prior conviction especially probative in light of the defendant's anticipated innocence defense.

Rule 404(b) allows evidence of the defendant's other crimes to be introduced for certain limited purposes, including establishing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Courts perform a two-step analysis to determine whether evidence of prior crimes should be

---

[3]     It is the position of the government that the filing of the instant trial brief and motions *in limine* fulfills the notice requirement articulated in Rule 404(b)(3).

admissible. First, courts determine whether evidence of the prior crime is "specially probative of an issue in the case" and not merely offered to show the defendant's bad character or propensity. *United States v. Whitney*, 524 F.3d 134, 141 (1st Cir. 2008) (citations omitted); *see also United States v. Galindez*, 999 F.3d 60, 66 (1st Cir. 2021) ("[A] judge performing a 404(b) analysis must ask whether the other-acts evidence is specially relevant to something other than a defendant's character . . . knowing that the special-relevance 'standard is not particularly demanding'") (citation omitted). Second, courts conduct a Rule 403 analysis, to ensure that the proof offered is more probative than prejudicial. *Id.* In determining the prior offense's probative value, courts focus on the proximity in time to the charged conduct, and "the degree of resemblance" between the prior and instant crimes. *See United States v. Varoudakis*, 233 F.3d 113, 119 (1st Cir. 2000) (internal citation omitted).

On the issue of knowledge and intent to distribute controlled substances, courts have repeatedly allowed the introduction of evidence or prior convictions to rebut a defense of innocent involvement, the most likely defense in this case. *See United States v. Landry*, 631 F.3d 597, 602 (1st Cir. 2011) (quoting *United States v. Landrau-Lopez*, 444 F.3d 19, 24 (1st Cir. 2006)); *see also United States v. Henry*, 848 F.3d 1, 8 (1st Cir. 2017) ("we have repeatedly upheld the admission of prior drug dealing by a defendant to prove a present intent to distribute"). Even if the defendant does not expressly raise an innocence defense at trial, the government should still be able to introduce evidence of the prior conviction. *See United States v. Pelletier*, 666 F.3d 1, 6 (1st Cir. 2011) (noting that the simple fact that the defendant did not argue lack of knowledge or intent would not, by itself, remove those issues from the case).

12

As to the Rule 403 analysis, the First Circuit has made plain that "the law shields defendants against *unfair* prejudice, not against *all* prejudice." *Whitney*, 524 F.3d at 141. (citations omitted) (emphasis in original). After all, Rule 403 "tilts the balance in favor of admission." *Id.* In a criminal trial, "relevant evidence is inherently prejudicial; it is only when *unfair* prejudice *substantially* outweighs probative value that the rule permits exclusion." *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983). (citations omitted) (emphasis in original).

Here, evidence of the defendant's prior conviction should be admissible at trial. The evidence is highly relevant to the defendant's knowledge and intent with respect to the distribution quantities of fentanyl and cocaine recovered from the Subject Vehicle. To the extent that the defendant argues, as is anticipated, that the substances recovered did not belong to him, the prior conviction is important rebuttal evidence to this innocence defense. The facts underlying the 2023 drug conviction are strikingly similar to the instant offense. In each, the defendant was found in a vehicle with a companion. In each, the defendant had recently been selling drugs. In each, law enforcement recovered similar distribution quantities of fentanyl. In each, the fentanyl was located in the vehicle and not on the person of the defendant. The conduct occurred only months apart.

If permitted to provide evidence regarding the defendant's prior possession with intent to distribute conviction, the Government will provide testimony from a law enforcement officer who was involved in the defendant's arrest and who has knowledge regarding the evidence that was recovered. The Government will also provide a certified judgment of conviction, admissible pursuant to Federal Rule of Evidence 803(22).

**D. Impeachment by Prior Conviction, Federal Rule of Evidence 609**

Federal Rule of Evidence 609(a)(1) allows impeachment of a defendant by evidence of prior convictions if the crime was punishable by death or imprisonment for over a year, provided the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the defendant. *United States v. Dixon*, 547 F.2d 1079, 1082-83 (9th Cir. 1976); *United States v. Mahone*, 328 F. Supp. 2d 77, 82 (D. Me. 2004); *see* Fed. R. Evid. 609(a)(1). In general, such evidence is only admissible if the convictions in question are less than ten years old. *See* Fed. R. Evid. 609(b). In "calibrating the Rule 609 scales" to determine whether the prior conviction evidence should be admitted, "the Court may consider a wide array of factors," including

> (i) the impeachment value of the particular convictions; (ii) their immediacy or remoteness (even though they are within the ten-year window); (iii) the degree of potential prejudice that they portend; (iv) the importance of the defendant's testimony; and (v) the salience of the credibility issue in the circumstances of the particular case.

*United States v. Brito*, 427 F.3d 53, 64 (1st Cir. 2005).

Should he elect to testify, the Government should be allowed to impeach Defendant with his 2023Massachusetts drug trafficking conviction. The conduct occurred far less than ten years ago. Additionally, this evidence has impeachment value, as "[p]rior drug-trafficking crimes are generally viewed as having some bearing on veracity." *Brito*, 427 F.3d at 64; *see United States v. Melvin*, 628 F. App'x 774, 778 n.7 (1st Cir. 2015) ("It is well established . . . that prior convictions for drug distribution bear on character for truthfulness . . . ."); *United States v. Matthews*, No. 1:11–cr–00227–JAW, 2012 WL 4343741, at *2 (D. Me. Sept. 21, 2012) (same). While the fact that the prior conviction is also a drug trafficking offense ostensibly cuts against admissibility, other courts—including the First Circuit—have found that prior drug trafficking

14

convictions are admissible for impeachment purposes when a defendant in a drug trafficking case elects to testify. *See United States v. Barrow*, 448 F.3d 37, 44 (1st Cir. 2006) (in drug trafficking case, district court "was well within its discretion" to allow impeachment of defendant with prior conviction because, *inter alia*, "the prior conviction was for drug trafficking, which we regard as bearing on credibility"); *United States v. Lattner*, 385 F.3d 947, 961-61 (6th Cir. 2004) (district court did not err by allowing drug trafficking defendant's credibility to be impeached with evidence of two prior felony drug convictions). Finally, if Defendant does in fact choose to testify, presumably he will attempt to discredit the testimony of the Government witnesses who observed Defendant's drug trafficking activities, including those who directly participated in the controlled purchases. If that is the case, Defendant's credibility will be critical, and the Government should therefore be permitted to impeach him with a conviction of the type that the First Circuit has unambiguously recognized as bearing on a witness's credibility.

### E. Stipulations

To reduce the number of witnesses and the length of trial, the parties have discussed a stipulation regarding the drugs seized by law enforcement pursuant to the defendant's arrest. The draft stipulation—agreed-upon in principle by the parties—states that the substances seized by law enforcement were submitted to a DEA laboratory for examination and forensic testing revealed that the substances contained fentanyl and cocaine.

### F. Motion to Preclude Defense Argument on Legal Impossibility

The government anticipates that the defendant will seek to argue at trial that he could not have possessed the fentanyl and cocaine present in the Subject Vehicle,

because CD-1 previously pleaded guilty to the possession with intent to distribute those same drugs. This argument seeks to marshal an erroneous legal conclusion in support of a (permissible) factual argument and should not be permitted by the Court: such an argument would only serve to confuse the jury.

The government acknowledges that the defendant may appropriately argue that he did not possess the drugs recovered from Subject Vehicle, or that he did not knowingly intend to distribute those drugs. The defendant may even appropriately argue that the drugs at issue belonged to CD-1 and that the defendant had no knowledge—or insufficient knowledge—of the drugs, as required by law for conviction. This motion seeks to prevent the defendant from arguing that the fact of CD-1's conviction itself should weigh against the defendant's knowledge and intent.

More than one person may possess drugs with the intent to distribute them. *See, e.g.,* First Circuit Pattern Jury Instructions, 21 U.S.C. § 841(a)(1) at 278-79 ("'Possession' also includes both sole possession and joint possession. If one person alone has actual or constructive possession, possession is sole. If two or more persons share actual or constructive possession, possession is joint.") (citation modified); *see also United States v. Paredes-Rodriguez*, 160 F.3d 49, 54 (1st Cir. 1998) (holding that intent "is an element of constructive possession, which exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others.") (citation modified). That CD-1 was convicted of possessing with intent to distribute the fentanyl and cocaine in the Subject Vehicle does not render it legally impossible for the defendant to have possessed with intent to distribute those same narcotics. In fact, CD-1's conviction is likely probative of the defendant's guilt.

To the extent that the defendant intends to argue that the fact of CD-1's conviction makes it less likely or impossible that the defendant possessed the fentanyl and cocaine recovered from the Subject Vehicle, that argument should be precluded. *Cf. United States v. Lamare*, 711 F.2d 3, 6 (1st Cir. 1983). In *Lamare*, a firearms case, the defendant, a prohibited felon, received a firearm which he then provided to a third party as collateral. Lamare sought to argue in his summation that "the possession of the firearm by others in the van for the defendant's use as collateral, could be perfectly proper if the defendant didn't possess or receive the firearm." *Id.* at 6. The court did not permit the argument because it was likely legally incorrect in light of the government's constructive possession theory. *Id.* Here, the argument the defendant might seek to make is analogous and should be precluded for the same reasons articulated in *Lamare*: it is legally incorrect and would be confusing to the jury.

## G. Section 851 Enhancement

It is the position of the Department of Justice that the sentencing enhancement applicable here through 21 U.S.C. § 851 involves two jury questions, specifically: (1) whether the defendant in fact served more than a year in prison as a result of his prior conviction, and (2) whether the defendant was released from imprisonment within 15 years of the commission of the instant offense. Facts that would increase a defendant's mandatory minimum are elements that must be submitted to the jury. *Alleyne v. United States*, 570 U.S. 99, 108 (2013); *see also United States v. Fields*, 53 F.4th 1027 (6th Cir. 2022) (no error in submitting Section 851 questions to the jury). Whether the prior conviction can be legally characterized as a "serious drug offense," is a question for the court. *See Descamps v. United States*, 570 U.S. 254, 261 (2013) (describing the categorical approach inquiry in the ACCA context).

17

In light of this analysis, the government makes the following recommendation as to this issue: if the Court allows the government to present evidence as to the 2023 Massachusetts drug conviction under Section 404(b) during trial, the government will elicit factual information sufficient to answer the two Section 851 jury issues in the affirmative (i.e., that the defendant was convicted of the offense, that he served in excess of a year in jail, and that he was released from jail within the past fifteen years). In that case, there would be no need for a separate proceeding, and the Court could simply instruct the jury on the Section 851 issue consistent with the proposed instructions provided by the government at the conclusion of trial. If, however, the Court determines that evidence relating to the 2023 Massachusetts conviction should be excluded, the government requests a bifurcated trial (as the Court conducted in *Fields*) to allow the jury to hear evidence of the defendant's prior serious drug offense conviction and the facts underlying that conviction.

## V.   CONCLUSION

For the reasons stated above, the government respectfully requests that the court grant its motions *in limine*, and further requests leave of the Court to supplement this trial brief between the time of filing and the time of trial in order to address any issues that may arise in the interim, or in the event that the matters discussed herein require further development.

Dated: May 27, 2026                Respectfully submitted,
      Portland, Maine

ANDREW B. BENSON
United States Attorney

*/s/ Noah Falk*
Noah Falk
Jonathan G. Nathans
Assistant U.S. Attorneys
100 Middle Street
Portland, Maine 04101
(207) 780-3257

19

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2026, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record.

ANDREW B. BENSON
United States Attorney


By: */s/ Noah Falk*
Noah Falk
Jonathan G. Nathans
Assistant U.S. Attorneys
100 Middle Street
Portland, Maine 04101
(207) 780-3257